United States District Court
Southern District of Texas
**ENTERED**
August 10, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| CHARLES DEVON WASSERMAN, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:25-CV-00039 |
| | § | |
| ERIC GUERRERO, | § | |
| | § | |
| Respondent. | § | |

# ORDER ADOPTING MEMORANDUM AND RECOMMENDATION

Petitioner Charles Devon Wasserman was convicted in 2013 of aggravated sexual assault of a child. He filed the instant petition for writ of habeas corpus, in which he claims that newly discovered medical records not previously presented at trial prove his actual innocence. Before the Court is Respondent's motion for summary judgment. D.E. 23. On March 16, 2026, United States Magistrate Judge Jason B. Libby issued his Memorandum and Recommendation (M&R), recommending that the Court grant the motion, dismiss this action as time-barred, and deny a certificate of appealability. D.E. 28. The parties were provided proper notice of, and opportunity to object to, the Magistrate Judge's M&R. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Petitioner timely filed his objections with the Court on March 30, 2026. D.E. 29.

## STANDARD OF REVIEW

A district court must review de novo any portion of a magistrate judge's proposed findings and recommendations on dispositive matters to which the parties have filed

specific, written objections. Fed. R. Civ. P. 72(b). Objections must point out with sufficient particularity any alleged error in the magistrate judge's analysis; otherwise, they do not constitute proper objections and will not be considered. *Id.* After considering proper objections, the district court may accept, reject, or modify, in whole or in part, those portions of the proposed findings and recommendations. *Id.* As to any portion for which no objection is filed, a district court reviews for clearly erroneous factual findings and conclusions of law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989) (per curiam).

**DISCUSSION**

The Magistrate Judge concluded that this action should be dismissed as time-barred, and Petitioner failed to meet the actual innocence standard to warrant an equitable exception to the limitations period. D.E. 28, pp. 9, 13. The Magistrate Judge recognized that "a plea of actual innocence may serve as a gateway exception through which a petitioner may avoid procedural bars or the expiration of the statute of limitations." *Id.* at 14 (citing *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Schlup v. Delo*, 513 U.S. 298 (1995); *House v. Bell*, 547 U.S. 518 (2006)).

"[A] convincing showing of actual innocence enable[s] habeas petitioners to overcome a procedural bar to consideration of the merits of their constitutional claims." *McQuiggin*, 569 U.S. at 386. "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably,

would have voted to find him guilty beyond a reasonable doubt." *Id.* (citing *Schlup*, 513 U.S. at 329; *House*, 547 U.S. at 538).

It is undisputed that, unless Petitioner can demonstrate that he has (a) newly discovered evidence, which (b) would result in his acquittal, his petition is time-barred. Therefore, the Court first considers these two prefatory issues. Finding that Petitioner has failed to sustain both predicates, the Court need not consider his additional objections and dismisses this case as time-barred.

**A. Newly Discovered Exculpatory Evidence**

Petitioner's initial objections center on the Magistrate Judge's findings regarding the "newly discovered exculpatory evidence" presented by Petitioner. Specifically, Petitioner proffered as "new" evidence the medical records of two physicians who initially treated the child. Petitioner objects that the Magistrate Judge "erroneously concluded that the treating physicians' medical records (which affirmatively document that no rectal perforation or sexual assault injury occurred) do not constitute 'newly discovered evidence' . . . despite these records never having been presented at trial." D.E. 29, pp. 3-4.

Petitioner argues that the Open File Agreement, which indicates that the State shared all of its evidence with Petitioner prior to trial, is not proof that the medical records were in fact turned over, and it is disputed whether the medical records were in the file. *Id.*, pp. 6-7, 21. He further argues that the medical records qualify as "new evidence" even if they were physically available at the time of trial because the records were "functionally unavailable" in that they were difficult to read or understand. *Id.*, p. 7. They were written

in medical shorthand and required medical expertise to decipher, which neither Petitioner nor his attorney possessed. *Id.*, pp. 7-9.

Petitioner's current experts reviewed these medical records and opined that the child had no perforation in his rectum or bowel. Because the State's theory at trial was that Petitioner caused a life-threatening rectal perforation during sexual assault using a razor, and because the treating physicians' medical records conclusively establish that no such perforation existed, Petitioner claims that the records confirm that no sexual assault or crime occurred. *Id.*, p. 6.

The Magistrate Judge concluded that these medical records were available during the original proceedings, and thus do not qualify as "new" evidence of actual innocence. D.E. 28, p. 15. The Magistrate Judge referenced the Open File Agreement in finding that the medical records were available, and stated that Petitioner failed to address this agreement or otherwise demonstrate that the medical records were unavailable or undisclosed at or prior to trial as part of the State's file. *Id.* The Magistrate Judge further found that Petitioner's allegations had been addressed and rejected by the state court during the state habeas proceedings. *Id.*, p. 16.

Under *Schlup*, a petitioner must support his gateway claim of actual innocence with new reliable evidence that was not presented at trial. *Hancock v. Davis*, 906 F.3d 387, 389 (5th Cir. 2018) (citing *Schlup*, 513 U.S. at 324). As Petitioner notes, the Fifth Circuit has yet to weigh in on a circuit split concerning whether "new reliable evidence" "must be newly discovered, previously unavailable evidence, or, instead, evidence that was available

but not presented at trial." *Id.* at 389 n.1. However, the Fifth Circuit has observed that evidence is not "new" under *Schlup* if "it was always within the reach of [a petitioner's] personal knowledge or reasonable investigation." *Id.* at 390 (quoting *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008)).

Because this Court must follow Fifth Circuit precedent, the Magistrate Judge did not err in concluding that, on this record, the medical records were available during the original proceedings. Even if the records were not in the State's file, the Court finds that a reasonable investigation would have led to the discovery of these relevant records.

Considering the nature of the child's injuries, the fact that the child received extensive medical treatment, and the anticipated medical testimony at trial, Petitioner should have known that medical records existed and that they could potentially contain exculpatory evidence. A reasonable investigation would have included a review of those records. The Magistrate Judge noted that Petitioner's trial counsel stated that he raised the need for experts in this case, but Petitioner repeatedly refused to hire experts, even though he had the financial ability to do so. D.E. 28, p.16 n.8. The Court agrees with the Magistrate Judge that the medical records are not "new" evidence under *Hancock*.

Petitioner's argument that the medical records were "functionally unavailable" because they were difficult to read or understand fails to provide any basis for finding that they constitute "new" evidence. Petitioner has not identified any circumstance that has changed the import, value, or understanding of the evidence by the passage of time.

Petitioner's objection is thus **OVERRULED**. Because Petitioner has not supported his claim with "new" evidence, the Court finds that he has not met his actual innocence gateway claim to warrant equitable relief from the limitations period. His petition is thus time-barred.

**B. The *Schlup* Inquiry**

The Court alternatively considers Petitioner's arguments, assuming the medical records constitute "new" evidence because they were not presented at trial. In that event, the Court must determine whether, "in light of the new evidence, no juror, acting reasonably, would have voted to find [Petitioner] guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386 (citing *Schlup*, 513 U.S. at 329).

Petitioner objects that the Magistrate Judge "dismissed three independent expert medical opinions that corroborate [the treating physicians' medical records'] exculpatory significance as a mere 'battle of the experts' without conducting the holistic probabilistic assessment mandated by *Schlup* and *House* . . . ." D.E. 29, pp. 3, 12-16. He states:

> [The "new"] evidence is not merely a disagreement between hired experts. It begins with the contemporaneous clinical findings of the physicians who actually examined and treated the child who found no perforation and no surgical issue. These findings were generated in real time, during emergency medical care, before any criminal investigation. The prosecution's theory rested entirely on Dr. Lukefahr, a consulting child abuse pediatrician who never treated the child and who, by his own testimony, based his opinions on a radiologist's initial CT read that was subsequently contradicted by the treating surgeon's hands-on clinical evaluation.

*Id.*, pp. 14-15.

Petitioner argues that jurors credit contemporaneous clinical findings from treating physicians over opinions from consulting physicians. *Id.*, p. 15. Thus, no reasonable juror would credit the physicians who testified at trial over the treating physicians, beyond a reasonable doubt. *Id.* And the remaining circumstantial evidence cannot sustain a conviction. *Id.*, p. 16.

The Magistrate Judge found that Petitioner overstated the substance and effect of the "new" evidence and the opinions of the after-trial experts. D.E. 28, p. 16. The Magistrate Judge stated that the medical records simply provided conflicting medical opinions to those of the State's trial experts regarding the cause of the injuries, and thus, if presented to a jury, would only result in a battle of the experts and not exculpate Petitioner. Therefore, Petitioner failed to demonstrate that in light of the evidence, including nonmedical evidence presented at trial, no juror would have voted to find him guilty. *Id.*, pp. 16-17.

*House* clarifies that courts confronted with the *Schlup* inquiry must consider "'all the evidence,' old and new, incriminating and exculpatory," without regard to its admissibility. *House*, 547 U.S. at 537-38. Based on this evidence, "the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* at 538. *Schlup* requires "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." *Schlup*, 513 U.S. at 316.

The Court finds that the M&R recited and applied the correct standard. *See* D.E. 28, p. 14 ("[A] petitioner does not meet the threshold requirement unless he persuades the

district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." (quoting *McQuiggin*, 569 U.S. at 386)); *see also* D.E. 28, p. 17 ("In short, Petitioner has failed to demonstrate that in light of this evidence, no juror would have voted to find him guilty given the other testimony and evidence presented at trial."). And the Magistrate Judge considered all of the evidence when arriving at his findings and conclusions, including the "new" evidence.

The State's medical experts at trial testified regarding the child's injury. First, Dr. Joel Dunlap, the pediatric radiologist at the hospital where the child was treated, evaluated the child's CT scan. D.E. 22-5, p. 104. He testified that he observed what appeared to be a rectal injury on the back wall of the rectum, which would have required a penetrating injury of three to four inches. *Id.*, pp. 106-08. His concern was that there had been forcible entry of a device or body part hitting against the sacrum and causing an injury. *Id.*, p. 114. He walked to the ICU where the child was to tell the doctors what he saw because "it was remarkable." *Id.*, p. 105. He had "no doubt at all" that the child was penetrated with a blunt object which caused the child's injury. *Id.*, p. 115. And the injury was consistent with the child having been penetrated by the blunt end of a razor. *Id.*, p. 116. He believed that there was a "high likelihood that this was done deliberately." *Id.*, p. 119. Additionally, such internal injury would not be caused by wiping or diarrhea. *Id.*

Second, Dr. Patricia Tenner, who practices pediatric critical care and treated the child in the ICU, testified that a rectal injury could explain the medical issues the child was experiencing. *Id.*, pp. 132-33. Finally, Dr. James Lukefahr, a pediatrician who specializes

in child abuse, testified based on a review of the relevant medical records. He did not treat the child. D.E. 22-6, pp. 235-36. He testified that the child had been the victim of abuse, having a penetrating injury to the anus. *Id.*, p. 237. The injury was consistent with a child who had been raped with a blunt object, such as the blunt end of a Gillette razor. *Id.*, pp. 237-38. And the injury observed could not have been caused by diarrhea or a rash, and was likely the result of a deliberate injury. *Id.*, p. 239. There were shallow lacerations and abrasions to the buttocks which would have been inflicted by an object capable of causing a linear abrasion or laceration to the skin. *Id.*, pp. 240-41. There were additional lacerations within the anal entrance, which is consistent with a deliberate injury. *Id.*, p. 242.

Petitioner argues that the new experts' opinions corroborate the "new" medical records' exculpatory significance.

> Three independent, highly qualified medical experts have reviewed the full medical record and unanimously confirmed what the treating physicians' records show: no rectal perforation or sexual assault injury occurred. Dr. James M. Betts (pediatric surgeon) concluded "there is no evidence of perforation of his bowel on the CT scan" and that the child's condition resulted from "a medical condition leading to severe dehydration, diarrhea, and excoriation." (D.E. 13-2, Page 2). Dr. James E. Crawford-Jakubiak (child abuse pediatrician) found the treating surgeon "clearly" determined there was no bowel perforation and that the child's condition was medical, not surgical. (D.E. 13-9, Pages 2-7). Dr. Kenneth W. Martin (radiologist) concluded "[t]here is no specific evidence of colonic or rectal perforation" and that "the diagnosis appears to have been excluded on clinical grounds by the consulting surgeon." (D.E. 13-10, Page 6).

D.E. 29, pp. 11-12.

The Court finds that Petitioner's "new" evidence provides conflicting medical opinions to those offered by the State's experts at trial regarding the child's injuries. As found by the Magistrate Judge, the evidence would result in a battle of the experts, and would not, in itself, exculpate Petitioner of aggravated sexual assault of a child. D.E. 28, p. 17. The Magistrate Judge cited to nonmedical evidence in the record that was also before the jury. "Officer Carl Brown testified a razor with a stain appearing to be blood on the blunt end was recovered from Petitioner's bathroom as well as a stained t-shirt and towel from the laundry hamper." *Id.*, p. 3. The child's mother testified that the three items belonged to Petitioner, and a forensic scientist testified that the items tested positive for the child's DNA. *Id.*

The Court finds no error in the Magistrate Judge's conclusion that "Petitioner has failed to demonstrate that in light of this evidence, no juror would have voted to find him guilty given the other testimony and evidence presented at trial." *Id.*, p. 17. Even if the medical records constitute "new" evidence, Petitioner has not met *Schlup*'s demanding standard. Accordingly, the objection is **OVERRULED**.

In light of this ruling, the Court does not address the remaining objections—constitutional arguments regarding ineffective assistance of counsel and *Brady* violations, application of § 2254's presumption that state court findings are correct, and request for discovery and an evidentiary hearing.

### C. Certificate of Appealability

Petitioner objects to the Magistrate Judge's recommendation to deny a certificate of appealability. D.E. 29, pp. 25-26. The Magistrate Judge correctly stated the law regarding a certificate of appealability with respect to the recommendation that Petitioner's claim be dismissed on procedural grounds. The Court agrees that "[r]easonable jurists would not find that Petitioner has stated a valid claim of denial of a constitutional right, or that the assessment of limitations in this case is debatable." *See* D.E. 28, p. 19.

Accordingly, a certificate of appealability is not warranted in this case. The objection is **OVERRULED**.

## CONCLUSION

Having reviewed the findings of fact, conclusions of law, and recommendations set forth in the Magistrate Judge's M&R, as well as Petitioner's objections and all other relevant documents in the record, and having made a de novo review of the portions of the Magistrate Judge's M&R to which objections were specifically directed, the Court **OVERRULES** Petitioner's objections and **ADOPTS** as its own the findings and conclusions of the Magistrate Judge (D.E. 28). Accordingly, the Court **GRANTS** Respondent's motion for summary judgment (D.E. 23), **DISMISSES** this action as time-barred, and **DENIES** a certificate of appealability.

**ORDERED** on August 10, 2026.

Nelva Gonzales Ramos

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE